IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA ASHACK, individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CALIBER HOME LOANS, INC.,<br><br>　　　　　　　Defendant. | NO.　　15-1069<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

### Preliminary Statement

Plaintiff, Rebecca Ashack, by her undersigned counsel, for this class action Complaint against Defendant, Caliber Home Loans, Inc., and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities (hereinafter referred to as "Defendant" or "Caliber"), alleges as follows:

### NATURE OF ACTION

1.　　　Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Caliber for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

### PARTIES

2.　　　Plaintiff, Rebecca Ashack ("Plaintiff"), is a natural person and a citizen of Indiana, residing in Marion County, Indiana.

3.　　　Defendant, Caliber Home Loans, Inc., is a Delaware corporation with its principal place of business in Irving, Texas.  Defendant is registered to do and is doing business in Indiana and throughout the United States.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically 15 U.S.C. § 1692 and 47 U.S.C. § 227.

5.      This Court has personal jurisdiction over Defendant because it has submitted to Indiana jurisdiction by registering with the Secretary of State to do business in the state of Indiana, and a substantial part of the wrongful acts alleged in this Complaint were committed in Indiana.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692

7.      In 1977, Congress found "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" across the industry and, as a result of that finding, enacted the FDCPA to "eliminate [those] abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(a) and (e).  The FDCPA provides a private cause of action to persons who are subjected to abusive debt collection practices in violation of 15 U.S.C. § 1692 *et seq*.  *See* 15 U.S.C. § 1692k.

8.      The FDCPA specifically prohibits creditors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  This prohibition includes, but is not limited to, falsely representing "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).

9.      The FDCPA also prohibits contacts from a debt collector with a debtor "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or

unless the attorney consents to direct communication with the consumer."  15 U.S.C.
§ 1692C(a)(2).

10.     The FDCPA also prohibits communication from a debt collector with a debtor "if
a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the
consumer wishes the debt collector to cease further communication with the consumer."
15 U.S.C. § 1692c(c).

11.     The FDCPA also makes it unlawful to "use[e] any false representation or
deceptive means to collect or attempt to collect any debt."  15 U.S.C. § 1692e(10).

12.     The FDCPA further prohibits using "unfair or unconscionable means to collect or
attempt to collect any debt".  15 U.S.C. § 1692f.  More specifically, FDCPA deems the "[t]he
collection of any amount . . . [that is otherwise not] . . . expressly authorized by the agreement
creating the debt or permitted by law" as an "unfair and unconscionable" means of collection.
15 U.S.C. § 1692f(1). 15 U.S.C. § 1692f.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

13.     In 1991, Congress enacted the TCPA in response to a growing number of
consumer complaints regarding certain telemarketing practices.

14.     The TCPA makes it unlawful "to make any call (other than a call made for
emergency purposes or made with the prior express consent of the called party) using an
automatic telephone dialing system or an artificial or prerecorded voice … to any telephone
number assigned to a … cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA
provides a private cause of action to persons who receive calls in violation of 47 U.S.C.
§ 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

15.     According to findings by the Federal Communication Commission ("FCC"), the
agency Congress vested with authority to issue regulations implementing the TCPA, such calls
are prohibited because, as Congress found, automated or prerecorded telephone calls are a
greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly
and inconvenient.  The FCC also recognized that wireless customers are charged for incoming

calls, whether they pay in advance or after the minutes are used.  *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014 (2003).

16.     On January 4, 2008, the FCC issued a Declaratory Ruling confirming that autodialed calls and calls using an artificial voice or prerecorded message to a wireless number by, or on behalf of, a creditor are permitted only if the calls are made with the "prior express consent" of the called party.  *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("FCC Declaratory Ruling"), 23 F.C.C. Rcd. 559 (2008).

17.     The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."  FCC Declaratory Ruling, 23 F.C.C. Rcd. 559, 564-65 ¶ 10 (2008).

18.     Under the TCPA, and pursuant to the FCC Declaratory Ruling, the burden is on the Defendant to demonstrate that the Plaintiff gave her express consent to Defendant to use an autodialer to call her cellular telephone within the meaning of the statute.  *See* FCC Declaratory Ruling, 23 F.C.C. Rcd. 559, 565 ¶ 10.

## FACTUAL ALLEGATIONS

**A.     Factual Allegations Regarding Defendant**

19.     Caliber is a full-service, national mortgage lender that holds itself out to be "one of the largest independent mortgage companies in the country."  *See* https://www.caliberhomeloans.com/about-us/caliber-news (last visited June 12, 2015).

20.     Caliber is "an approved Seller/Servicer for both Fannie Mae and Freddie Mac, an approved issuer for Ginnie Mae and is an approved servicer for FHA, VA and the USDA."  *Id.*

21.     Caliber services mortgage loans nationwide, including in Indiana.

22.     Caliber is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it uses instrumentalities of interstate commerce including the mails in its business, the principal purpose

of which is the collection of debts owed or due or asserted to be owed or due to another.  Many of the debts Caliber attempts to collect were in default at the time they were obtained by Caliber.

**B.    Factual Allegations Regarding Plaintiff**

23.    Plaintiff is a "consumer" as defined by 15 U.S.C. 1692(a)(3) because she is a person obligated or allegedly obligated to pay any debt.

24.    On May 10, 2010, Plaintiff purchased real property located at 4933 Brehob Road, Indianapolis, Indiana 46217 (the "Property").  Plaintiff financed the purchase of the Property through a mortgage from PNC Mortgage, a division of PNC Bank, National Association ("Mortgage Account").

25.    Plaintiff's Mortgage Account constitutes a "debt" as defined by 15 U.S.C. § 1692a(5) because it is an obligation of Plaintiff, a consumer, to pay money arising out of a transaction in which the money and property, which are the subject of the transaction, are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

26.    In 2013, Plaintiff experienced financial hardship and her expenses began to dwarf her income and assets.

27.    As a result, Plaintiff filed a Chapter 7 bankruptcy petition in the United States District Court for the Southern District of Indiana on July 22, 2013.  *See In re Bankruptcy of Rebecca Ashack*, 13-07785-FJO-7 ("Bankruptcy"), Doc 1.

28.    Plaintiff included her Mortgage Account in her bankruptcy filing.  At the time of filing, Plaintiff's Mortgage was serviced by PNC Mortgage.

29.    Plaintiff's bankruptcy, including the Mortgage Account, was discharged on November 13, 2013.  *See* Bankruptcy, Doc. 19.

**C.    Factual Allegations Regarding Plaintiff's FDCPA Allegations**

30.    On or about August 29, 2014, Plaintiff received a letter from Caliber stating that, effective August 22, 2014, her Mortgage Account would be owned by LSF9 Mortgage Holdings,

Inc. and her new loan servicer would be Caliber.  A copy of this letter is attached hereto as Exhibit A.

31.     At the time Caliber acquired servicing rights to Plaintiff's Mortgage Account, the Mortgage Account was in default.

32.     On or about September 5, 2014, Plaintiff received a letter from Caliber, stating that her Mortgage Account was delinquent and that she owed $23,669.87 by October 1, 2014.  A copy of this letter is attached hereto as Exhibit B.

33.     On or about September 16, 2014, Plaintiff received a telephone call on her cellular telephone from Caliber concerning her Mortgage Account.  During this telephone call:

    a.     The Caliber representative specifically requested to speak with Plaintiff.

    b.     Plaintiff informed the Caliber representative that the telephone number the Caliber representative had dialed was Plaintiff's personal cellular telephone number.

    c.     The Caliber representative told Plaintiff that she was late on her mortgage payments associated with her Mortgage Account.

    d.     Plaintiff informed the Caliber representative that the debt associated with the Mortgage Account had been discharged in bankruptcy.

    e.     Plaintiff provided the Caliber representative with the cause number for her bankruptcy.

    f.     The Caliber representative acknowledged that Caliber did not have any notification regarding Plaintiff's bankruptcy filing.

    g.     Despite these notifications from Plaintiff, the Caliber representative continued to pressure Plaintiff to either pursue loss mitigation options, such as a short sale, or to pay the balance allegedly owed on her Mortgage Account.

    h.     Plaintiff requested that the Caliber representative cease and desist all direct communication with her related to her Mortgage Account and instead speak directly with her bankruptcy attorney, Ryan Wright.

34.     On September 17, 2014, the day after the initial call from the Caliber representative, Plaintiff faxed copies of her bankruptcy discharge documents to Caliber, along with a statement that the debt associated with her Mortgage Account had been discharged.

35.     Notwithstanding Plaintiff's verbal and written notifications regarding the discharge of the debt associated with her Mortgage Account, Defendant continued to directly contact Plaintiff on her cellular telephone to attempt to collect the alleged debt.

36.     On or about November 3, 2014, Mr. Wright faxed Caliber a letter stating that the debt associated with Plaintiff's Mortgage Account had been discharged in bankruptcy and Caliber should cease all direct contact related to the Mortgage Account with Plaintiff.

37.     Plaintiff received numerous calls to her cellular telephone from Caliber, including but not limited to, on the following dates:  9/15/14; 9/19/14; 9/22/14; 9/23/14; 9/24/14; 9/25/14; 9/26/14; 9/29/14; 10/2/14; 10/3/14; 10/4/14; 10/10/14; 10/15/14; 10/16/14; 10/17/14; 10/18/14; 10/21/14; 10/23/14; 10/27/14; 10/29/14; 10/30/14; 11/3/14; 11/5/14; 11/7/14; 11/12/14; 11/15/14; 11/18/14; 12/25/14; 1/2/15; 1/7/15; 1/8/15; 1/9/15; 1/12/15; 1/16/15; 1/12/15; 1/16/15; 1/22/15; 1/23/15; 1/28/15; 1/29/15; 2/3/15; and 2/4/15.

38.     Each of the above-listed calls consisted of attempts by Caliber to collect debt associated with Plaintiff's Mortgage Account.

39.     Plaintiff and members of the FDCPA Class, described in paragraph 52 below, have incurred damages consequent to Calibers' violations of the FDCPA.  Said damages include, but are not limited to, emotional distress damages, postage cost, value of time spent in an attempt to resolve this dispute with Caliber, cost of fuel and mileage incurred as a direct result of Caliber's actions, value of minutes used from their cellular telephone plans while attending to unwanted calls from Caliber, and value of time spent tending to unwanted calls.

**D.      Factual Allegations Regarding Plaintiff's TCPA Allegations**

40.      Plaintiff is the account holder of a Sprint cellular telephone number and, pursuant to the terms of her contract, is charged for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

41.      Almost immediately after Caliber acquired the servicing rights to Plaintiff's Mortgage Account, Caliber began calling Plaintiff on her cellular telephone.

42.      As stated in paragraph 33(h) above, on September 16, 2014, Plaintiff requested that Caliber cease calling her on her cellular telephone.

43.      As stated in paragraph 36 above, on November 3, 2014, Plaintiffs' Bankruptcy Counsel, Mr. Wright, requested that Caliber cease all communication with the Plaintiff, including calls to her cellular telephone.

44.      As stated in paragraph 37 above, Plaintiff received numerous calls to her cellular telephone despite requests to cease such calls.

45.      Some of the calls answered by Plaintiff, and placed by Caliber, had a standard pause and gap before a live operator was available.  Consequently, many, if not all, of the calls Caliber made to Plaintiff on her cellular telephone, including, but not limited to, the calls listed in paragraph 37 above, were made using an automatic telephone dialing system ("ATDS") and/or artificial or prerecorded voice.

46.      Caliber's calls to Plaintiff on her cellular telephone were made for purposes of collecting a debt associated with her Mortgage Account.

47.      Caliber did not obtain prior express consent to call Plaintiff on her cellular telephone for purposes of attempting to collect debt associated with her Mortgage Account. Alternatively, any prior express consent obtained was revoked by:  (1) Plaintiff's affirmative act of filing for bankruptcy; (2) by operation of law as a result of the automatic bankruptcy stay and ensuing discharge injunction; and (3) by Plaintiff's and her attorney's affirmative act of demanding, both verbally and in writing, that Caliber cease and desist calling Plaintiff on her cellular telephone.

48.     Defendant is responsible for making the above-described ATDS-generated and/or automated or prerecorded calls.

49.     Defendant has made a significant number of similar ATDS generated and/or automated or pre-recorded calls to persons on their cellular telephones in Indiana and throughout the entire United States.

50.     Defendant intends to continue to make similar ATDS-generated and/or automated or prerecorded calls to persons on their cellular telephones in Indiana and throughout the entire United States.

51.     Plaintiff and members of the TCPA Class, described in paragraph 52 below, have been damaged by these illegal calls because their privacy was improperly invaded, minutes were used from their cellular telephone plans, and they were forced to spend time tending to unwanted calls.  *See Martin v. Leading Edge Recovery Solutions, LLC*, Case No. 11 C 5886, 2012 WL 3292838, at *2  (N.D. Ill. Aug. 10, 2012).  Furthermore, Plaintiff and members of the TCPA class also incurred injury including but not limited to postage cost, value of time spent in an attempt to resolve this dispute with Caliber, and cost of fuel and mileage incurred as a direct result of Caliber's actions.

## CLASS ACTION ALLEGATIONS

52.     Class Definition.  Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this case as a class action on behalf of National Classes (hereinafter collectively referred to as the "Classes") defined as follows:

> FDCPA Class:   All persons in the United States from whom Defendant has attempted to collect on a consumer debt that cannot be enforced through court action because (a) the person had filed for bankruptcy; (b) the person had such debt discharged in bankruptcy; (c) Defendant obtained the rights to service such debt after the loan was in default; and (d) said collection attempts were made at any time in the period that begins one year before the date of filing this Complaint to trial.
>
> TCPA Class:  All persons in the United States to whom Defendant and/or a third party acting on Defendant's behalf, (a) made one or

more non-emergency telephone calls; (b) to their cellular telephone number; (c) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

Collectively, all of these persons will be referred to as members of the Classes.  Plaintiff represents, and is a member, of the Classes.

53.     Excluded from Classes are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in Defendant, and Defendant's legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

54.     Numerosity.  Plaintiff does not know the exact number of members in the Classes but Plaintiff reasonably believes that each Class is so numerous that joinder of all members is impracticable.  On information and belief, the Classes each have more than 100 members.  Moreover, the disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

55.     Commonality.  There are numerous questions of law and fact common to Plaintiff and members of the FDCPA Class.  These common questions of law and fact include, but are not limited to, the following:

a.     As to Plaintiff and the FDCPA Class, whether Defendant violated 15 U.S.C. § 1692e(2)(A) by making false representations of the character amount, or legal status of any debt;

b.     As to Plaintiff and FDCPA Class, whether Defendant violated 15 U.S.C § 1692c(c) by communicating with Plaintiff and members of the FDCPA Class after allegedly being alerted that they refused to pay the alleged debt;

c.     As to Plaintiff and FDCPA Class, whether Defendant violated 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiff and members of the FDCPA Class who were represented by counsel to collect an alleged debt even though:  the Defendant knew the Plaintiff

10

and members of the FDCPA Class were represented by an attorney with respect to such debt; and Defendant knew or could have readily ascertained the attorneys' name and address;

          d.     As to Plaintiff and the FDCPA Class, whether Defendant violated 15 U.S.C. § 1692e(10) by using any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a customer.

          e.     As to Plaintiff and FDCPA Class, whether Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect or attempt to collect any debt.

     56.     Similarly, there are numerous questions of law and fact common to Plaintiff and members of the TCPA Class.  These common questions of law and fact include, but are not limited to, the following:

          a.     As to Plaintiff and the TCPA Class, whether Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice;

          b.     As to Plaintiff and the TCPA Class, whether Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf knowingly and/or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using and ATDS or artificial or prerecorded voice, thus entitling Plaintiff and the TCPA Class to treble damages;

          c.     As to Plaintiff and the TCPA Class, whether Defendant is liable for ATDS generated and/or automated or prerecorded calls attempting to collect debt related to a mortgage account serviced by Defendant; and

          d.     As to Plaintiff and the TCPA Class, whether Defendant and/or its agents, affiliates, and/or other persons or entities acting on Defendant's behalf should be enjoined from violating the TCPA in the future.

57.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Classes.  Plaintiff's claims, like the claims of Classes arise out of the same common course of conduct by Defendant and are based on the same legal and remedial theories.

58.    <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class action litigation, including consumer class actions, FDCPA class actions, and TCPA class actions.  Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have the financial resources to do so.  Neither Plaintiff nor her counsel have interests that are contrary to or that conflict with those of the proposed Classes.

59.    <u>Predominance</u>.  Defendant has engaged in a common course of conduct toward Plaintiff and members of the Classes.  The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

60.    <u>Superiority</u>.  A class action is the superior method for the fair and efficient adjudication of this controversy.  Classwide relief is essential to compel Defendant to comply with the FDCPA and TCPA.  The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action for violation of the TCPA and the FDCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and/or were made in an attempt to collect debt that was no longer enforceable.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

61.    <u>Injunctive and Declaratory Relief Appropriate</u>.  Defendant has acted on grounds generally applicable to the Classes, thereby making final injunctive relief and corresponding

declaratory relief with respect to the Classes appropriate on a classwide basis.  Moreover, on information and belief, Plaintiff alleges that the automated calls and the attempts to collect debt made by Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CAUSES OF ACTION**

**FIRST COUNT**

**VIOLATIONS OF THE FEDERAL DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692 *et seq.***

62.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

63.     The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including the following provisions:

a.     15 U.S.C. § 1692e(2)(A), by making false representations of the character amount, or legal status of any debt of Plaintiff and members of the FDCPA Class.  Caliber falsely represented that Plaintiff owed $23,669.87 on her Mortgage Account when the debt had been discharged in Plaintiff's bankruptcy proceeding.  On information and belief, Caliber made similar false representations to members of the FDCPA Class.

b.     15 U.S.C. § 1692c(c), by communicating with Plaintiff and members of the FDCPA Class after allegedly being alerted that they refused to pay the alleged debt.  Plaintiff notified Caliber that her debt was discharged in bankruptcy, and she did not intend to pay this debt.  On information and belief, Caliber committed similar violations against members of the FDCPA Class.

c.     15 U.S.C. § 1692c(a)(2), by communicating with Plaintiff and members of the FDCPA Class who were represented by counsel to collect an alleged debt even though:  the Defendant knew the Plaintiff and members of the FDCPA were represented by an attorney with respect to such debt; and Defendant knew or could have readily ascertained the attorneys' name

and address.  Plaintiff notified Caliber that she had filed bankruptcy and was being represented by her bankruptcy counsel.  On information and belief, Caliber committed similar violations against members of the FDCPA Class.

        d.      15 U.S.C. § 1692e(10), by using any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning Plaintiff and members of the FDCPA Class.  Caliber falsely represented that Plaintiff owed $23,669.87 on her Mortgage Account when the debt had been discharged in Plaintiff's bankruptcy proceeding.  Caliber continued collection attempts on the Mortgage Account despite numerous notifications by Plaintiff and her representative about her bankruptcy filing and discharge.  On information and belief, Caliber committed similar violations against members of the FDCPA Class.

        e.      15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect a debt allegedly owed by Plaintiff and members of the FDCPA Class.  Caliber falsely represented that Plaintiff owed $23,669.87 on her Mortgage Account when the debt had been discharged in Plaintiff's bankruptcy proceeding.  Caliber continued collection attempts on the Mortgage Account despite numerous notifications by Plaintiff and her representative about her bankruptcy filing and discharge.  On information and belief, Caliber committed similar violations against members of the FDCPA Class.

        64.      As a result of Defendant's violations of the FDCPA, Plaintiff and each member of the FDCPA Class are entitled to statutory damages of up to $1,000 pursuant to 15 U.S.C. § 1692k(a)(1).  Additionally, Plaintiff and members of the FDCPA Class are entitled to statutory damages of up to $500,000, or 1% of Defendant's net worth, whichever is less, pursuant to 15  U.S.C. § 1692k(a)(2)(B).  Plaintiff and members of the FDCPA Class are also entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and to their reasonable attorneys' fees and costs pursuant to 15 U.S.C. 1692k(a)(3).

## SECOND COUNT

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
## 47 U.S.C. § 227(b)(1)(A)

65.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

66.     The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the TCPA Class using an ATDS and/or artificial or prerecorded voice.

67.     As a result of the Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the TCPA Class presumptively are entitled to an award of $500 in statutory damages for each and every call to their cellular telephone numbers using and ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68.     Plaintiff and members of the TCPA Classes are also entitled to and do seek injunctive relief prohibiting the Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 46 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

69.     Plaintiff and members of the TCPA Class are also entitled to an award of attorneys' fees and costs.

## THIRD COUNT

## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE
## CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)(1)(A)

70.     Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

71.     The foregoing acts and omissions of the Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the TCPA Class using an ATDS and/or artificial or prerecorded voice.

72.     As a result of the Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and members of the TCPA Class are entitled to treble damages of up to $1,500 for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

73.     Plaintiff and members of the TCPA Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded in the future.

74.     Plaintiff and members of the TCPA Class are also entitled to an award of attorneys' fees and costs.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff, on her own behalf and on behalf of the members of the Classes, prays for judgment against Defendant as follows:

A.      Certification of the proposed Classes;

B.      Appointment of Plaintiff as representative of the Classes;

C.      Appointment of the undersigned counsel as counsel for the Classes;

D.      A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA and FDCPA;

E.      An order enjoining Defendant and/or its affiliates, agents and/or other related entities, as provided by law, from engaging in the unlawful conduct set forth herein;

F.      An award to Plaintiff and the Classes of damages, as allowed by law;

G.      An award to Plaintiff and the Classes of attorneys' fees and costs, as allowed by law and/or equity;

H.      Leave to amend this Complaint to conform to the evidence presented at trial; and

I.      Orders granting such other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY**

Plaintiff demands a trial by jury for all issues so triable.

Dated:  July 9, 2015.

Respectfully submitted,


/s/  Syed Ali Saeed
Syed Ali Saeed (#28759-49)
SAEED & LITTLE, LLP
1433 N. Meridian Street, Suite 202
Indianapolis, Indiana  46202
Telephone: (317) 614-5741
Facsimile:  1-888-422-3151
Email:  ali@sllawfirm.com

Ryan R. Frasher
THE FRASHER LAW FIRM, P.C.
155 E. Market Street, Suite 450
Indianapolis, Indiana 46204

Telephone:  (317) 634-5544
Facsimile:  (317) 630-4824
Email:  rfrasher@frasherlaw.com

Beth E. Terrell
Email:  bterrell@tmdwlaw.com
TERRELL MARSHALL DAUDT
  &WILLIE PLLC
936 N. 34th Street, Suite 300
Seattle, Washington 98103
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

*Attorneys for Plaintiff and the Proposed Class*