IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA ASHACK, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CALIBER HOME LOANS, INC.,<br><br>     Defendant. | NO. 1:15-cv-01069-JMS-DML<br><br>**JURY TRIAL DEMANDED**<br><br>Honorable Jane E. Magnus-Stinson |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS
SETTLEMENT, CONDITIONAL CERTIFICATION OF CLASS, AND ENTRY
OF SCHEDULING ORDER**

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ................................................................................................. 1

II.  STATEMENT OF FACTS ................................................................................... 2

    A.   Background and procedural history ...................................................... 2

    B.   Discovery, mediation, and settlement negotiations ............................. 2

    C.   The proposed settlement ...................................................................... 3

        1.   Payment to Plaintiff .................................................................. 4

        2.   Attorneys' fees and litigation expenses .................................... 4

        3.   Administration costs .................................................................. 5

        4.   Settlement Class payments ........................................................ 5

III. AUTHORITY AND ARGUMENT ...................................................................... 7

    A.   The settlement approval process .......................................................... 7

    B.   Criteria for settlement approval .......................................................... 9

        1.   The settlement provides substantial relief for Settlement Class
            Members, particularly in light of the uncertainty of prevailing
            on the merits ............................................................................. 9

        2.   Continued litigation is likely to be complex, lengthy, and
            expense .................................................................................... 13

        3.   Class Counsel strongly endorse the settlement ....................... 14

        4.   The stage of the proceedings and the amount of discovery
            completed supports preliminary approval ............................... 14

        5.   The settlement is the product of informed, non-collusive
            Negotiations ............................................................................ 15

IV.  THE COURT SHOULD CERTIFY A SETTLEMENT CLASS ................... 15

    A.   Rule 23(a) requirements ..................................................................... 16

1.    Numerosity is satisfied...................................................................16

2.    Commonality is satisfied...............................................................16

3.    Plaintiff's claims are typical of the Settlement Class ............................16

4.    Plaintiff and her counsel will adequately represent the proposed
      Settlement Class.....................................................................17

B.    Rule 23(b)(3)......................................................................................17

1.    Common Issues Predominate..................................................18

2.    A class action is superior .....................................................19

V.    THE PROPOSED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND...........20

VI.   SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE....................21

VII.  CONCLUSION.........................................................................22

# TABLE OF AUTHORITIES

**Page No.**

## FEDERAL CASES

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................. 18, 19

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) .......................................... 8

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ............................................................... 7-10, 14

*Costello v. BeavEx, Inc.*,
   810 F.3d 1045 (7th Cir. 2016) ...................................................................... 18

*De La Fuente v. Stokely–Van Camp, Inc.*,
   713 F.2d 225 (7th Cir. 1983) ....................................................................... 17

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ........................................................................ 7

*Erica P. John Fund, Inc. v. Halliburton*,
   131 S. Ct. 2179 (2011) ............................................................................. 18

*Estrada v. iYogi, Inc.*,
   No. 2:13–01989 WBS CKD, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) .................... 11

*Franklin v. Wells Fargo Bank, N.A.*,
   Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) .......... 11

*Gehrich v. Chase Bank USA, N.A.*,
   316 F.R.D. 215 (N.D. Ill. 2016) ..................................................................... 11

*G.M. Sign, Inc. v. Finish Thompson, Inc.*,
   No. 07 C 5953, 2009 WL 2581324 (N.D. Ill. Aug. 20, 2009) ............................... 12, 16

*Green v. Serv. Master on Location Servs. Corp.*,
   No. 07 C 4705, 2009 WL 1810769 (N.D. Ill. June 22, 2009) ........................................ 19

*Hinman v. M and M Rental Ctr., Inc.*,
   545 F.Supp.2d 802 (N.D. Ill. 2008) ................................................................ 19

*In re Capital One TCPA Litig.*,
    80 F. Supp. 3d 781 (N.D. Ill. 2015) .............................................................................. 11

*In re Gen. Motors Corp. Engine Interchange Litig.*,
    594 F.2d 1106 (7th Cir. 1979) ...................................................................................... 10

*In re Mexico Money Transfer Litig.*,
    164 F. Supp. 2d 1002 (N.D. Ill. 2000) .......................................................................... 14

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ............................................................................... 7, 9, 10

*Jamison v. First Credit Servs., Inc.*,
    290 F.R.D. 92 (N.D. Ill. 2013) ..................................................................................... 12

*Keele v. Wexler*,
    149 F.3d 589 (7th Cir. 1998) ....................................................................................... 16

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) .............................................................. 11, 13, 16, 17

*Manouchehri v. Styles for Less, Inc.*,
    Case No. 14cv2521 NLS, 2016 WL 3387473 (S.D. Cal. June 20, 2016)...................... 11

*Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*,
    834 F. 2d 677 (7th Cir. 1987) ...................................................................................... 15

*McKinnie v. JP Morgan Am. Express Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009)......................................................................... 14

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)............................................................................................... 20, 21

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..................................................................................................... 20

*Pruitt v. City of Chicago*,
    472 F.3d 925 (7th Cir. 2006) ....................................................................................... 16

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ..................................................................................... 17

*Sadowski v. Med1 Online, LLC*,
    No. 07 C 2973, 2008 WL 2224892 (N.D. Ill. May 27, 2008) ................................. 19, 20

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................................ 13

*Suchanek v. Sturm Foods, Inc.,*
    764 F.3d 750 (7th Cir. 2014) ...................................................................... 16

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ....................................................... 9, 10, 13, 14

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ................................................................................ 16

*Wright v. Nationstar Mtg. LLC,*
    No. 14 C 10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................... 11

## FEDERAL STATUTES

47 U.S.C. § 227 ................................................................................................... 1

47 U.S.C. § 227(b)(3) ....................................................................................... 10

## FEDERAL RULES

Fed. R. Civ. P. 23(a)(1) ..................................................................................... 16

Fed. R. Civ. P. 23(a)(3) ..................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ..................................................................................... 17

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 18

Fed. R. Civ. P. 23(e)(1) ..................................................................................... 20

Fed. R. Civ. P. 23(e)(3) ....................................................................................... 9

## OTHER AUTHORITIES

5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:1
    (5th ed. updated December 2016) ................................................................. 8

5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:14
    (5th ed. updated December 2016) ............................................................... 15

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
    23 F.C.C.R. 559 (2008) ........................................................................................... 12

*Manual for Complex Litigation (Fourth)* § 21.312 (2016) ......................................... 20

*Manual for Complex Litigation (Fourth)* §§ 21.632 – 21.634 (2016) .......................... 8

## I.  INTRODUCTION

Plaintiff Rebecca Ashack ("Plaintiff") has reached a settlement with Defendant Caliber Home Loans, Inc. ("Caliber" or "Defendant") in this proposed class action lawsuit brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  The settlement requires Caliber to pay $2,895,000 to establish a non-reversionary settlement fund for the benefit of Plaintiff and the approximately 244,685 proposed Settlement Class members.  All Settlement Class members who submit a simple claim form will receive a cash payment.

The settlement fund also will be used to pay (1) all costs associated with administration of the settlement, capped at $285,000; (2) an incentive award of $4,500 to Plaintiff, as approved by the Court; (3) an award of attorneys' fees of up to one-third of the settlement fund after notice expenses are deducted, which equals $870,000, as approved by the Court; and (4) an award of costs estimated to be approximately $30,000, as approved by the Court.  If the Court approves these requests, approximately $1,705,500 will be used to pay cash awards to Settlement Class Members who file claims.  Plaintiff's counsel estimate that each claimant will receive $70–$100 depending upon the number of claims submitted.

The proposed settlement is more than fair, reasonable, and adequate, and as shown below, exceeds many approved class settlements under the TCPA on a per claimant recovery.  Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel the law firms Terrell Marshall Law Group PLLC, The Frasher Law Firm, P.C., and Saeed & Little, LLP; (4) appoint Rebecca Ashack as Class Representative; (5) approve the proposed notice plan; (6) appoint Kurtzman Carson Consultants ("KCC") to serve as claims administrator; and (7) schedule the final fairness hearing and related dates.

## II.  STATEMENT OF FACTS

### A.   Background and procedural history.

Caliber is a full-service, national mortgage lender that holds itself out to be "one of the largest independent mortgage companies in the country."  Dkt. No. 60.  Caliber is also "an approved Seller/Servicer for both Fannie Mae and Freddie Mac, an approved issuer for Ginnie Mae and is an approved servicer for FHA, VA and the USDA."  *Id*.  In these roles, Caliber services mortgage loans nationwide, including in Indiana.  *Id*.

Plaintiff alleges that in attempting to collect on a mortgage, Caliber made dozens of calls to her cell phone despite requests to cease such calls.  Dkt. No. 60 ¶ 26.  Plaintiff alleges that some of the calls answered by Plaintiff, and placed by Caliber, had a standard pause and gap before a live operator was available, indicating that those calls were made using an automatic telephone dialing system ("ATDS") and/or artificial or prerecorded voice.  *Id*. ¶ 27.  Plaintiff alleges that at the time Caliber made the calls, it did not have Plaintiff's consent to do so.  *Id*. ¶ 29.  Plaintiff alleges that Caliber has made similar unlawful calls to persons on their cellular telephones in Indiana and throughout the entire United States.  *Id*. ¶ 31.  Caliber's records show that it used its autodialer to place calls to approximately 244,685 persons during the proposed class period.  Ex. A (Declaration of Jennifer Rust Murray ("Murray Decl.")) ¶ 3.

Caliber denies all allegations of wrongdoing and liability in this Action and also denies that Plaintiff's claims are appropriate for class treatment at trial.

### B.   Discovery, mediation, and settlement negotiations.

The parties have actively litigated this action for a year-and-a-half.  Murray Decl. ¶ 4.  Plaintiff propounded written discovery requests targeting Caliber's policies and practices, and the calling data necessary to identify the class and establish the scope of the violations.  *Id*.  Caliber produced nearly five thousand pages of documents, including dialer handbooks and

company policies and procedures.  *Id.*  Caliber also produced calling records that identify the dates and phone numbers to which Caliber made calls, and Plaintiff retained an expert witness who analyzed the call records to identify unique class members and the number of allegedly unlawful calls.  *Id.*  Plaintiff also took three depositions pursuant to Federal Rule of Civil Procedure 30(b)(6).  *Id.*  Caliber also served Plaintiff with written discovery.  *Id.*  Plaintiff responded to the requests, sat for a deposition, and was ready and willing to testify at trial.  *Id.*

As a result of the extensive discovery they engaged in, by the time the parties commenced settlement negotiations, they understood the strength and weaknesses of their claims and defenses and the extent of class wide damages.  Murray Decl. ¶ 5.  The parties mediated with Bruce Friedman of Judicial Arbitration and Mediation Services, Inc. ("JAMS") on August 26, 2016.  *Id.*  During that full-day mediation session, Caliber agreed to pay $2,875,000 to resolve the case.  *Id.*

Following mediation, Caliber commenced the process of assembling a "class list;" that is, a list containing the names and addresses of all potential Settlement Class members.  Murray Decl. ¶ 6.  While doing so, Caliber learned that the Settlement Class included approximately 36,158 additional class members.  Caliber also learned that it did not have names and addresses for some of the Settlement Class members.  *Id.*  The parties re-opened settlement negotiations.  Caliber ultimately agreed to pay an additional $20,000 to account for the additional Settlement Class members.  *Id.*  An executed copy of the parties' Settlement and Release, including proposed notices and a proposed claim form, is attached as Exhibit 1 ("Settlement Agreement").

### C.    The proposed settlement.

The proposed "Settlement Class" is comprised of approximately 244,685 persons who, on or after July 9, 2011, and through and including the date this action is finally approved, received a call to their cellular telephone line through the use of an automatic telephone dialing

system or an artificial or prerecorded voice made by or on behalf of Defendant.  Settlement Agreement § 2.21.

The Settlement Agreement requires Caliber to pay $2,895,000 into a "Settlement Fund." Settlement Agreement § IV.1.  The Settlement Fund will cover all of the following as approved by the Court:  payments to Settlement Class members who timely file valid claims; payments to Class Counsel of up to $870,000 in fees and approximately $30,000 in litigation expenses; costs of administration capped at $285,000; and an incentive award in the amount of $4,500 to Plaintiff.  *Id*. §§ IV-V.  If any amounts remain in the Settlement Fund as a result of uncashed checks, the parties will ask the Court to disburse those funds to the National Consumer Law Center.  *Id.* § IV.3.

       1.    <u>Payment to Plaintiff.</u>

The Settlement Agreement provides that Plaintiff's counsel may request that the Court approve a service award to Plaintiff.  Settlement Agreement § V.1.  If approved by the Court, Ms. Ashack will receive an incentive award of $4,500.  Ms. Ashack assisted with the drafting of the complaint, provided information regarding her interactions with Caliber, responded to written discovery, sat for a deposition, and was ready and willing to testify at trial.  Murray Decl. ¶ 7. The incentive award counsel seeks compensates Plaintiff for her time and effort and for the risks she undertook in prosecuting the case.

       2.    <u>Attorneys' fees and litigation expenses.</u>

The Settlement Agreement provides that Plaintiff's counsel may request that the Court approve an award of attorneys' fees and litigation expenses.  Settlement Agreement § V.2. Plaintiff's counsel will file a fee petition with the Court requesting an attorneys' fee award of 33.33% of the Settlement Fund after settlement administration expenses are deducted ($870,000) to compensate them for the work already performed in the case and the risk they undertook

taking this action on a contingent basis.  *See* Murray Decl. ¶ 8.  The Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded.  Counsel will file the fee petition thirty days before the objection deadline for Settlement Class members to review.  *Id.*

Plaintiff's Counsel also seek reimbursement for the out-of-pocket costs they have incurred prosecuting this action.  Currently, Plaintiff's Counsel estimate their costs to be approximately $30,000.  Murray Decl. ¶ 9; Ex. B (Declaration of Ryan R. Frasher ("Frasher Decl.")) ¶ 20; Ex. C (Declaration of Syed Ali Saeed ("Saeed Decl.")) ¶ 13.  This amount includes the over $16,000 Class Counsel paid to their expert to analyze Caliber's data, identify class members, and determine the number of TCPA violations.  The remaining amount includes general litigation expenses such as travel to depositions, transcript costs, and mediation expenses.  In connection with their fee petition, Class Counsel will provide the Court with an updated detailed report itemizing these expenses.

    3.    <u>Administration costs.</u>

The parties have retained KCC to administer the settlement and process claims. Settlement Agreement § II.3.  KCC will be responsible for preparing and sending notice via U.S. mail, fielding questions from Settlement Class members regarding the settlement, establishing and maintaining a settlement website, processing claims, serving CAFA notice, and issuing checks to all members of the Settlement Class who file claims.  Settlement Agreement § VII.

    4.    <u>Settlement Class payments.</u>

The remainder of the Settlement Fund, $1,705,500 will be distributed proportionately to all Settlement Class members who submit a valid and timely claim form.  Settlement Agreement § VIII.  Assuming the Court grants the requested attorneys' fees and litigation expenses, Plaintiff estimates that each Settlement Class member who submits a claim will receive $70–100.  Murray Decl. ¶ 10.

To receive a cash payment, Settlement Class members must submit a claim form. Settlement Agreement §§ VIII(1)-(2).  The claims administrator will mail a postcard that can be signed and returned.  *Id*. § VII(3)(a).  Settlement Class members also may submit claim forms electronically on a Settlement Website.  *Id*. § VII(3)(b).  Regardless of the method by which they submit their claims, Settlement Class members only need to sign the claim form certifying that the information is correct.  *Id*. Ex. A.  Once all the claims have been received, the claims administrator will calculate the amount of an individual Settlement Class member's award on a pro rata basis after deducting any court-awarded attorneys' fees, litigation costs, notice and claims administration expenses, and any court-awarded service awards for the named Plaintiff. Settlement Agreement § IV(2).

In conjunction with preliminary approval, Plaintiff respectfully asks the Court to approve a notice program, which KCC will administer by (1) performing "reverse lookups" to locate names and addresses associated with the approximately 42,000 Settlement Class members for whom Caliber did not have contact information in its records; (2) updating Settlement Class address information using the National Change of Address database; (3) mailing a postcard to Settlement Class members; (4) performing one "skip trace" to locate an updated address for a postcard returned as undeliverable; (5) setting up and maintaining the Settlement Website; (6) preparing and serving CAFA notice; and (7) approving claims, tracking individuals who have opted out, and calculating and issuing Settlement Awards.  Settlement Agreement §§ VII(3), VIII(3)-(4).

Settlement Class members will have sixty days from the date the postcard and claim form are mailed to submit a written request to be excluded from the Settlement Class.  Settlement Agreement §§ II(13), IX(1).  Settlement Class members also will have sixty days from the initial

mailing to object to the settlement.  *Id.* §§ II(12), X(1).  Class Counsel will post their fee petition on the Settlement Website at least thirty days before the deadline to object.

The postcard that KCC will mail to Settlement Class members, which is written in plain English, summarizes the settlement and clearly sets forth the deadline to submit a claim, request exclusion, or object to the settlement.  Settlement Agreement, Ex. A.  The postcard includes the amount of Class Counsel's requested fee and provides Settlement Class members with an estimate of their cash award if they file a claim.  *Id.*  The postcard directs the Settlement Class members to a settlement website for further information.  At the Settlement Website, copies of the Settlement Agreement, preliminary approval order, and operative complaint will be available for viewing and downloading, and the website will include frequently asked questions. Settlement Agreement § VII(3)(b).

## III.  AUTHORITY AND ARGUMENT

### A.    The settlement approval process.

Federal courts naturally favor the settlement of class action litigation, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (affirming settlement in class action involving complex issues, which would entail considerable additional expense, and likely involve weeks, perhaps months, of trial time); *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985), *cert. denied*, 478 U.S. 1004 (1986) (affirming settlement approval where the substantial risks of litigation and the time and expense that a long trial would require justified the settlement); *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation

imposes upon already scarce judicial resources."). Because the traditional means for handling claims like those at issue here — individual litigation — would unduly tax the court system, require a massive expenditure of resources, and, given the small value of the claims of the individual class members, would be wholly impracticable, the proposed settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner.

The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement; (2) dissemination of notice of the settlement to all affected class members; and (3) a "fairness hearing" or "final approval hearing," at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented. *Manual for Complex Litigation (Fourth)* ("MCL 4th") §§ 21.632 – 21.634, at 433-34 (2016). This procedure safeguards class members' due process rights and enables the court to fulfill its role as the guardian of class interests. *See* 5 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 13:1 (5th ed. updated December 2016).

Plaintiff requests that the Court take the first step in the settlement approval process by granting preliminary approval of the proposed Settlement Agreement. The purpose of preliminary evaluation of proposed class action settlements is merely to determine whether the settlement is "within the range of possible approval," and thus whether sending notice to the class of the settlement's terms and holding a formal fairness hearing would be worthwhile. *Armstrong*, 616 F.2d at 314. Accordingly, at the preliminary approval stage, courts need not "conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). This Court has broad discretion to approve or reject a proposed settlement.

*Armstrong,* 616 F.2d at 313-14 ("A district court's determination that a settlement is fair, reasonable and adequate will be reversed on appeal only upon a clear showing that the court abused its discretion.").

The Court's grant of preliminary approval will allow the Settlement Class to receive direct notice of the proposed Settlement Agreement's terms and the date and time of the final approval hearing, at which Settlement Class members may be heard regarding the Settlement Agreement, and at which time further evidence and argument concerning the settlement's fairness, adequacy, and reasonableness may be presented.  *See* MCL 4th § 21.634.

**B.** **Criteria for settlement approval.**

A court may approve a settlement that would bind class members only if, after proper notice and a public a hearing, the court determines that the proposed settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(3).  In evaluating the fairness of a settlement, district courts in the Seventh Circuit consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement."  *Synfuel Techs., Inc. v. DHL Express (USA), Inc*., 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby,* 75 F.3d at 1199).

Here, because each of fairness factors are satisfied and the settlement is the product of arm's length negotiations, it should be preliminarily approved.

1.   The settlement provides substantial relief for Settlement Class Members, particularly in light of the uncertainty of prevailing on the merits.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the plaintiff's case on the merits balanced against the amount offered

in the settlement." *Synfuel*, 463 F.3d at 653 (internal quotes and citations omitted).  However, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs, because the essence of settlement is compromise. *Isby*, 75 F.3d at 1200.  *In re Gen. Motors Corp. Engine Interchange Litig*., 594 F.2d 1106, 1135 (7th Cir. 1979) (observing an acceptable settlement is "a bilateral exchange ... where both sides gain as well as lose something") (internal quotation marks omitted).

The Settlement Agreement provides excellent relief for the proposed class.  Caliber has agreed to pay $2,895,000 into a Settlement Fund.  The Settlement Fund is non-reversionary—all funds will be disbursed following final approval.  No funds will revert to Caliber.  Each Settlement Class Member who submits a simple claim form will receive a pro rata share of the Settlement Fund after settlement expenses are deducted.  Although the precise amount of each claimant's award cannot be determined until all claims have been submitted, Plaintiff estimates that each claimant will receive between $70 and $100.  Murray Decl. ¶ 10.  This estimate is based on a conservatively estimated claims rate range of 7% to 10%.  *Id.*

Class Counsel acknowledge that the $2,895,000 Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class, who theoretically could recover $500, or up to $1,500, in statutory damages for each violation of the TCPA if they were to prevail in litigation.  *See* 47 U.S.C. § 227(b)(3)(B) (permitting $500 in statutory damages for each violation of the TCPA); 47 U.S.C. § 227(b)(3)(C) (permitting $1,500 for "willful" TCPA violations).  But class action settlements, like settlements in any litigation, are bargained exchanges between the parties.  *Armstrong*, 616 F.2d at 315.  As such, obtaining a Settlement Fund with less than the full measure of statutory damages should not weigh against preliminary approval.  The settlement was reached after extensive factual investigation and discovery of the

- 10 -

claims and defenses, considering the risks involved in the actions, and after arm's-length negotiations overseen by an experienced mediator.

Further, the estimated awards are in line with — and indeed exceed — awards approved in other TCPA settlements in the Seventh Circuit and elsewhere. *See Wright v. Nationstar Mtg. LLC*, No. 14 C 10457, 2016 WL 4505169, at *8–9 (N.D. Ill. Aug. 29, 2016) (approving TCPA settlement where each claimant receive $45); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (approving settlement where recovery per claimant was $52.50); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (granting final approval where each class member would be awarded $39.66); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493–94 (N.D. Ill. 2015) ($30); *Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement class members received approximately $71.16); *Estrada v. iYogi, Inc.*, No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40).

The proposed settlement is an excellent outcome for the Settlement Class, especially in light of the risks of continued litigation.  Plaintiff and her counsel were confident in the strength of their case and their ability to prevail both on the merits and at class certification.  However, Caliber argues that class members are not entitled to recover because they consented to be contacted on their cell phones in a variety of ways, including by providing their cell phone numbers on loan applications.  According to a 2008 FCC order, autodialed collection calls to "wireless numbers provided by the called party in connection with an existing debt are made

- 11 -

with the "prior express consent" of the called party," and are therefore permissible.  *In re Rules and Regulations Implementing the Tele. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559 ¶ 9 (2008) ("2008 TCPA Order").  Thus, there is a risk that Plaintiff could lose at trial if Caliber prevails on this affirmative defense.

The parties also disagree as to whether a class can be certified.  Caliber maintains that class members provided consent in a variety of ways, necessitating an individualized inquiry that would preclude class certification.  Plaintiff, on the other hand, believes that the issue of consent is capable of class-wide resolution based on Caliber's own call data.  "There is a split of opinion in TCPA cases on whether issues of individualized consent predominate over common questions of law or fact so as to prevent class certification." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106 (N.D. Ill. 2013).  The rule is that issues of individualized consent predominate "when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Id.* at 106–107 (declining to certify class where defendant presented evidence that some proposed class members had consented to calls and where figuring out whether a person had provided consent would require a "labor intensive review" of notes fields in the defendant's computer system).  By contrast if the defendant fails to submit such evidence, class certification may be appropriate. *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *6 (N.D. Ill. Aug. 20, 2009) (The defendant "cannot defeat class certification by asserting the vague possibility that some of the individuals on the anonymous lists have perchance consented to receiving the fax."). Plaintiff believes that Caliber will be unable to satisfy its evidentiary burden at class certification.  However, if Caliber were able to present convincing facts to support its assertion that a significant number of proposed class members consented to calls, there is a risk that the

Court would decline to certify the Settlement Class, leaving only the named Plaintiff to pursue her individual claims.

By contrast, the proposed settlement provides Settlement Class members immediate and certain payment. Each Settlement Class member who submits a claim will receive a cash payment of approximately $70 to $100. Considering Caliber's potentially meritorious consent defense, and the possibility that Plaintiff may recover nothing if she were to proceed further with the litigation, the settlement provides excellent value to the Class.

       2.    <u>Continued litigation is likely to be complex, lengthy, and expensive.</u>

Courts in the Seventh Circuit are instructed to consider the likely complexity, length, and expense of continued litigation when determining whether a class action settlement satisfies Rule 23(e)(2). *Synfuel*, 463 F.3d at 653. When litigation will be costly and lengthy, settlement is especially favored because "the present lawsuit will come to an end and Class Members will realize both immediate and future benefits as a result." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Although Caliber has produced, and Plaintiff has reviewed, thousands of pages of documents, more discovery would need to take place prior to Plaintiff's motion for class certification, which Caliber would vigorously contest. Even if Plaintiff prevailed on its certification motion, Caliber would likely appeal and subsequently bring a motion for summary judgment. Moreover, Caliber would likely appeal if Plaintiff obtains a judgment after trial. All of these proceedings would increase time and expense while reducing the possibility of recovery. *See, e.g., Kolinek*, 311 F.R.D. at 495 (approving settlement where continued litigation would necessitate additional discovery and benefits to the class would be delayed or denied by further motion practice); *Schulte*, 805 F. Supp. 2d at 586 (without settlement, there would be a motion to dismiss, discovery, contested class certification and a possible appeal, summary judgment, and a trial on damages).

- 13 -

3.     Class Counsel strongly endorse the settlement.

The Seventh Circuit has held that the opinion of competent counsel is relevant to determining the fairness, reasonableness, and adequacy of a class action settlement. *Synfuel*, 463 F.3d at 653.  Plaintiff's counsel in this case are highly experienced class action litigators, who strongly support the proposed settlement.  Their support for the settlement comes only after engaging in discovery, exhaustively evaluating Plaintiff's claims, and participating in a full-day mediation session before an experienced mediator.  This factor weighs in favor of approval.  *See McKinnie v. JP Morgan Am. Express Bank, N.A.,* 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (factors including that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys").

4.     The stage of the proceedings and the amount of discovery completed supports preliminary approval.

The final *Synfuel Technologies* factor is the stage of proceedings and the amount of discovery completed.  Courts are to consider this factor in order to determine "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Armstrong*, 616 at 325.  The parties have litigated this case, thoroughly and effectively, for over a year-and-a-half. Plaintiff's counsel thoroughly analyzed the factual and legal issues involved in this case.  Murray Decl. ¶¶ 4-6.  Plaintiff's counsel propounded written discovery, reviewed thousands of pages of documents, and deposed Caliber's Rule 30(b)(6) designee. *Id.*  The parties reached a settlement only after they were well positioned to assess the strength of the case and the merits of Plaintiff's claims. *Id.*  This factor favors settlement approval.

- 14 -

5.      The settlement is the product of informed, non-collusive negotiations.

The requirement that a settlement be fair is designed to protect against collusion among the parties.  Courts will not deny preliminary approval unless there is some evidence of collusion.  Newberg § 13:14; *Mars Steel Corp. v. Cont'l Ill. Nat. Bank and Trust Co. of Chicago*, 834 F. 2d 677, 684 (7th Cir. 1987) (approved settlement upon finding of no "hanky-panky" in negotiations).

The parties engaged the services of mediator, Bruce Friedman, who has extensive experience in resolving TCPA class actions, to assist them with their settlement discussions.  Murray Decl. ¶ 5.  At all times the settlement discussions were arms-length and adversarial in nature.  *Id.*  Counsel for both parties are experienced in litigating TCPA claims, understand the legal and factual issues involved in litigating TCPA cases generally, and through targeted, efficient discovery were well-versed in the facts of this case in particular.  As a result, the parties were well-positioned to evaluate the strengths and weaknesses of the case, as well as the appropriate basis upon which to settle it.

## IV.  THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

Plaintiff respectfully requests that this Court provisionally certify the proposed Settlement Class for settlement purposes under Federal Rule of Civil Procedure 23(a) and (b)(3).  Such certification will allow the Settlement Class to receive notice of the settlement and its terms, including the right to submit a claim and recover money if the settlement is approved, the right to be heard on the settlement's fairness, the right to opt out of the settlement, and the date, time and place of the formal settlement hearing.  For the following reasons, certification of the Class for settlement purposes is appropriate under Rule 23(a) and (b)(3).

- 15 -

**A.     Rule 23(a) requirements.**

1.     Numerosity is satisfied.

The numerosity requirement of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1); *see Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006) (numerosity is typically satisfied if a class consists of at least 40 members).  Plaintiff estimates the proposed Settlement Class consists of approximately 244,685 persons spread throughout the country.  Numerosity is satisfied.

2.     Commonality is satisfied.

Rule 23(a)(2)'s commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011).  "A common nucleus of operative fact is usually enough to satisfy the commonality requirement."  *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).  When claims stem from a single course of conduct, commonality is satisfied.  *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (commonality met because the claims "all derive from a single course of conduct by [defendant]: the marketing and packaging of [coffee]," so "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members").

This case raises numerous common issues, including whether Caliber violated the TCPA by autodialing cell phones without first obtaining express permission to do so; whether Plaintiff and other class members are entitled to statutory damages; and whether Caliber's acts were "willful" or "knowing" under the TCPA, such that Plaintiff and other class members are entitled to trebled damages.  *See G.M. Sign, Inc.*, 2009 WL 2581324, at *4 (commonality met in a TCPA

case whether factual and legal issues were the same for all class members); *Kolinek*, 311 F.R.D. at 491 ("The claims of all class members depend on the resolution of a key common question: whether prescription refill reminder calls violate the TCPA when they are prerecorded and recipients receive them before ever affirmatively consenting to them."). Commonality is satisfied.

       3.    <u>Plaintiff's claims are typical of the Settlement Class.</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied when a plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Typicality is satisfied when the named plaintiff's claim and those of the class members have a common legal theory, even if there are some factual variations. *Kolinek*, 311 F.R.D. at 491.

Here, Plaintiff's and Settlement Class members' claims arise from the same course of events: Caliber's robocalls to cell phones. Plaintiff and proposed Settlement Class members all seek statutory damages for these calls. Typicality is satisfied.

       4.    <u>Plaintiff and her counsel will adequately represent the proposed Settlement Class.</u>

The last Rule 23(a) requirement assures that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy of representation requirement involves two inquiries: whether the plaintiff's attorney is qualified, experienced, and capable of conducting this type of litigation, and whether the named plaintiff's interests are not antagonistic to those of the class. *See, e.g., Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (rejecting argument that representative parties did not fairly represent the class). The adequacy of representation requirement is intended to "uncover conflicts of interest

between the named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, Plaintiff's interests in this litigation are aligned with those of the class. All seek recovery for unlawful robocalls calls. Plaintiff hired lawyers that are experienced in class actions generally and TCPA litigation in particular. *See* Murray Decl. ¶¶ 11-20. All counsel support the settlement. *See* Murray Decl. ¶¶ 21-22; Frasher Decl. ¶ 19; Saeed Decl. ¶ 12. Adequacy is satisfied.

**B.     Rule 23(b)(3).**

Class certification under Rule 23(b)(3) is appropriate where (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Erica P. John Fund, Inc. v. Halliburton*, 131 S. Ct. 2179, 2184 (2011).

1.     Common Issues Predominate.

"Predominance is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1059 (7th Cir. 2016) (alterations and internal quotation marks omitted). This inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy," with the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623.

This case is particularly well-suited for class treatment because the legal and factual questions — which focus on Caliber's conduct — are the same for each class member. The central issue, whether Caliber is liable for calls made using an automatic telephone dialing system to cell phones, will be proved through its calling records. This issue can be established

on a class-wide basis through expert analysis of Caliber's calling data and loan servicing records.

*See Sadowski v. Med1 Online, LLC*, No. 07 C 2973, 2008 WL 2224892, at *4 (N.D. Ill. May 27, 2008) (finding common issues such as "how numbers were generated from Defendant's database" and whether the act of sending unsolicited faxes "violated the TCPA" predominated over individualized defenses and damages issues).

> 2. A class action is superior.

Rule 23(b)(3) also requires that a class action be superior to other available methods for adjudicating the controversy. The superiority requirement is often met where class members' claims would be too small to justify individual suits, and a class action would save litigation costs by permitting the parties to assert their claims and defenses in a single proceeding. *Green v. Serv. Master on Location Servs. Corp*., No. 07 C 4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("Resolution of the issues on a classwide basis, rather than thousands (or zero) individual lawsuits is an efficient use of judicial resources."); *Hinman v. M and M Rental Ctr., Inc.,* 545 F.Supp.2d 802, 807 (N.D. Ill. 2008) ("[R]esolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."); *see also Amchem*, 521 U.S. at 617 (noting that "the Advisory Committee had dominantly in mind vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all").

With respect to superiority, since the claims are being certified for purposes of settlement, there are no issues with manageability. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."). And, resolution of hundreds of thousands of claims in

one action is far superior to individual lawsuits, promoting consistency and efficiency of

adjudication.  *See Sadowski*, 2008 WL 2224892, at *5 (quoting *Murray v. New Cingular

Wireless Servs.*, 232 F.R.D. 295, 303 (N.D. Ill. 2005)) ("In consumer actions involving small

individual claims, such as this one, class treatment is often appropriate because each member's

damages 'may be too insignificant to provide class members with incentive to pursue a claim

individually.'")  For these reasons, certification of the Settlement Class for purposes of

settlement is appropriate.

### V.  THE PROPOSED NOTICE PROGRAM IS CONSTITUTIONALLY SOUND

The Rule 23(e)(1) requires the Court to "direct notice in a reasonable manner to all class

members who would be bound by" a proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see also*

MCL 4th § 21.312.  The best practicable notice is that which is "reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford them an

opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S.

306, 314 (1950).

The proposed forms of notice, attached as Exhibits A and D to the Settlement Agreement

("Notices"), do just that.  The Notices are clear, straightforward, and provide Settlement Class

members with enough information to evaluate whether to participate in the settlement.  Thus, the

Notices satisfy the requirements of Rule 23 and due process.  *Phillips Petroleum Co. v. Shutts*,

472 U.S. 797, 808 (1985)) (explaining a settlement notice must provide settlement class

members with an opportunity to present their objections to the settlement).

Caliber could not locate the names and addresses associated with approximately 42,000

cell phone numbers that it dialed.  KCC will perform reverse lookups to match those telephone

numbers with names and addresses.  KCC also will update the addresses of Settlement Class

members using the National Change of Address database, and then send them notice directly by

mail.  KCC will also perform limited skip trace services to locate addresses for postcards

returned as undeliverable.  This Notice Program satisfies due process, especially because Rule 23

does not require that each potential class member receive actual notice of the class action.

*Mullane*, 339 U.S. at 316 (explaining that the Supreme Court "has not hesitated to approve of

resort to publication as a customary substitute in [a] class of cases where it is not reasonably

possible or practicable to give more adequate warning").  All in all, the Notice Program

constitutes the best notice practicable under the circumstances, provides sufficient notice to the

Settlement Class, and fully satisfies the requirements of due process and Rule 23.

## VI.  SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE

The last step in the settlement approval process is a final approval hearing at which the

Court may hear all evidence and argument necessary to make its settlement evaluation.

Proponents of the settlement may explain the terms and conditions of the Settlement Agreement,

and offer argument in support of final approval.  The Court will determine after the final

approval hearing whether the settlement should be approved, and whether to enter a final order

and judgment under Rule 23(e).

Plaintiff requests that the Court set a date for a hearing on final approval at the Court's

convenience, but no earlier than 60 days after the objection/exclusion deadline, and schedule

further settlement proceedings pursuant to the schedule set forth below:

| ACTION | DATE |
| --- | --- |
| Preliminary Approval Order Entered | At the Court's Discretion |
| Notice Deadline | Within 60 days following entry of Preliminary Approval Order |
| Class Counsel's Fee Motion Submitted | Within 30 days following entry of Preliminary Approval Order |

| ACTION | DATE |
|---|---|
| Exclusion/Objection Deadline | 60 days after Notice Deadline |
| Deadline to Submit Claims | 60 days after Notice Deadline |
| Final Approval Brief and Response to Objections Due | Within 95 days after Notice Deadline |
| Final Approval Hearing/Noting Date | No earlier than 60 days after the Opt-Out (Exclusion) and Objection Deadline |
| Final Approval Order Entered | At the Court's Discretion |

## VII.  CONCLUSION

For all of the above reasons, the proposed Settlement presented to this Court by all parties is well within "the range of possible approval" and should be preliminarily approved in all respects, as specifically set forth in Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement and Conditional Certification of Class, and Entry of Scheduling Order.

Dated:  January 20, 2017                     Respectfully submitted,

                                            TERRELL MARSHALL LAW GROUP PLLC

                                            By: /s/Jennifer Rust Murray, *Admitted Pro Hac Vice*
                                               Beth E. Terrell, *Admitted Pro Hac Vice*
                                               Jennifer Rust Murray, *Admitted Pro Hac Vice*
                                               Mary B. Reiten, *Admitted Pro Hac Vice*
                                               936 North 34th Street, Suite 300
                                               Seattle, Washington  98103-8869
                                               Telephone:  (206) 816-6603
                                               Facsimile:  (206) 319-5450
                                               Email:  bterrell@terrellmarshall.com
                                               Email:  jmurray@terrellmarshall.com
                                               Email:  mreiten@terrellmarshall.com

Ryan R. Frasher
THE FRASHER LAW FIRM, P.C.
155 East Market Street, Suite 450
Indianapolis, Indiana  46204
Telephone:  (317) 634-5544
Facsimile:  (317) 630-4824
Email:  rfrasher@frasherlaw.com

Syed Ali Saeed
Jeff Neuenschwander, #27980-49
SAEED & LITTLE, LLP
1433 North Meridian Street, Suite 202
Indianapolis, Indiana  46202
Telephone:  (317) 614-5741
Facsimile:  (888) 422-3151
Email:  ali@sllawfirm.com
Email:  jeff@sllawfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, Jennifer Rust Murray, hereby certify that on January 20, 2017, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the following:

Michael H. Gottschlich, #22668-49
Edward M. Smid, #30134-49
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433
Email:  mgottschlich@btlaw.com
Email:  edward.smid@btlaw.com

David T. Biderman, *Admitted Pro Hac Vice*
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone:  (310) 788-9900
Facsimile:  (310) 788-3399
Email:  dbiderman@perkinscoie.com

Donna Strain, *Admitted Pro Hac Vice*
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California  94105
Telephone: (415) 344-7000
Facsimile:  (415) 344-7050
Email:  dstrain@perkinscoie.com

*Attorneys for Defendant*

DATED this 20th day of January, 2017.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/Jennifer Rust Murray
    Jennifer Rust Murray, *Admitted Pro Hac Vice*
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 319-5450
    Email:  jmurray@terrellmarshall.com

*Attorneys for Plaintiff*